**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHERYL ELLIS and GENA HAMILTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : | |
| Plaintiffs, | : | 3:09-cv-1089 (CFD) |
| v. | : | |
| GENERAL REVENUE CORPORATION, | : | |
| Defendant. | : | |

**RULING ON MOTION FOR CLASS CERTIFICATION AND MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

The plaintiffs, Cheryl Ellis and Gena Hamilton, both have student loans that went into default. The defendant, General Revenue Corp. ("GRC"), is the collection agency that attempted to collect the outstanding debt on behalf of the student loan guarantor. GRC sent letters to Ellis, Hamilton and the members of the purported classes telling them they could rehabilitate their defaulted student loans through a federal loan rehabilitation program by making nine consecutive monthly payments. The federal statute which governs the program provides that a loan is rehabilitated when the guarantor receives nine payments within ten months. Plaintiffs filed this lawsuit on July 8, 2009, alleging GRC's characterization of the repayment schedule violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692–1692p, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a–42-110q.

## II. Background[1]

This case arises from GRC's alleged violations of the federal student loan rehabilitation program. (See 20 U.S.C. § 1078-6(a)(1) and 34 C.F.R. § 682.405.) Specifically, 34 C.F.R. § 682.405 states that in order for a borrower to rehabilitate a defaulted loan, "the borrower must voluntarily make at least nine of the ten payments required under a monthly repayment agreement," and all nine payments must be "received within a ten-month period that begins with the month in which the first required due date falls and ends with the ninth consecutive calendar month following that month."

Plaintiffs' student loan debts were bought by a guarantor, United Student Aid Funds, Inc., that then referred both accounts to GRC for collection. The plaintiffs received letters from GRC offering them the opportunity to enter a loan rehabilitation program. Ellis received a loan rehabilitation offer letter on October 30, 2007 and Hamilton received the letter on April 2, 2008. The loan rehabilitation offer advises the borrower that:

> Nine (9) *consecutive* monthly payments . . . must be received timely. . . . According to federal law, a loan may be considered eligible for rehabilitation only after you have made voluntary and reasonable payments for each of the 9 *consecutive* months. If a payment is received too late, too early, or for less than the agreed amount, this offer becomes null and void and the series of 9 payments must start over again. (Emphasis added.)

Ellis made seven consecutive payments beginning in October 2007, but then failed to make her May 2008 (eighth) payment. In July 2008, she agreed to a new loan rehabilitation program, this time with smaller monthly payments than before. On July 10, 2008, GRC sent Ellis the forms necessary to complete her application for the renewed program, and one of those

[1] These facts are taken from the parties' Rule 56 statements, depositions, affidavits and supporting exhibits and are undisputed except where otherwise noted.

forms repeated the disputed language. Although Ellis began making payments again, she did not initially return a signed copy of the agreement. GRC's system automatically sent duplicate letters that repeated the disputed language until Ellis finally returned the agreement on May 11, 2009. This second time, Ellis made enough payments to qualify her loan for rehabilitation.

Hamilton made her first payment in April 2008. On April 2, 2008, GRC sent Hamilton a letter agreement to confirm her enrollment in the rehabilitation program, and it repeated the disputed language. Hamilton never executed the letter agreement, and so GRC continued to send her copies of the document. Hamilton made her first eight payments (through November 2008). She failed to make her December 2008 payment, which would have been her ninth and qualified her loan for rehabilitation. She never made any additional payments to GRC.

This lawsuit was filed on July 9, 2009. Plaintiffs move to certify the class, and GRC moves for summary judgment.

## III. Applicable Law and Discussion

The Court will first address GRC's motion for summary judgment, then the plaintiffs' motion for class certification.

### A. Summary Judgment

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine disputes as to any material fact and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as

would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

**1. FDCPA statute of limitations**

GRC first argues that it is entitled to summary judgment because the plaintiffs' claims were brought after the FDCPA's statute of limitations had expired. The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute imposes civil liability on debt collectors who violate its provisions, and provides that an action under the statute may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. Because the complaint was filed on July 8, 2009, a "violation" must have occurred

between July 9, 2008, and July 8, 2009, for the claim to be within the statute of limitations. GRC argues that since both Ellis and Hamilton received their initial loan rehabilitation program letters before July 9, 2008 (in October 2007, and April 2008, respectively) the alleged violations occurred outside the statutory window, and therefore the plaintiffs' FDCPA claims are time-barred. Plaintiffs contend that the duplicate copies of the letter agreements, which contained the disputed language, that GRC continued to send during 2008 each constituted an independent "violation," bringing the claims within the statutory window.

GRC concedes these subsequent letters were sent during the one-year limitations period, but argues they do not constitute a "violation." GRC's position is that if its characterization of the loan program constituted a statutory violation, that violation only occurred the first time it sent the loan rehabilitation offer letters. GRC argues the duplicate letters that contain the allegedly misleading language cannot create "fresh" FDCPA violations. In support of this argument, GRC cites to several district court cases from other districts. In Fraenkel v. Messerli & Kramer, No. 04-1072, 2004 WL 1765309 (D. Minn. July 29, 2004), the plaintiff's FDCPA claim was dismissed as time-barred. The "violation" of FDCPA that the plaintiff pointed to was an allegedly improper demand for attorney's fees from the borrower. The plaintiff argued that when the debt collector filed a complaint in state court seeking to recover the debt, the same allegedly improper demand for attorney's fees was repeated, so the violation re-occurred. The court disagreed, ruling that the FDCPA claim was time-barred because "new communications concerning an old claim do not start a new period of limitations." Id. at *4. GRC seeks to rely on this language, arguing duplicate letters sent to Ellis and Hamilton are similarly "new communications concerning an old claim" that do not re-start the statute of limitations period.

However, Fraenkel and the other cases GRC cites all involve fact patterns in which the "violations" within the one-year window are court filings that repeat the claimed misinformation, not a communication from the debt collector to the debtor. See, e.g., Calka v. Kucker, Kraus & Bruh, LLP, No. 98-0990, 1998 U.S. Dist. LEXIS (S.D.N.Y. Aug. 3, 1998) (dismissing an FDCPA claim because the filing of an amended complaint and motion for summary judgment did not re-start the statute of limitations); Sierra v. Foster & Garbus, 48 F. Supp. 2d 393 (S.D.N.Y. 1999) (dismissing an FDCPA claim because a summons and complaint did not re-start the statute of limitations).

By contrast, plaintiffs have cited to several cases that hold that when there are multiple communications between the debt collector and the plaintiff—some which fall outside the statutory period and some which fall within it—FDCPA claims may be based on communications within the one-year period, and are not time barred. See, e.g., Pittman v. J.J. MacIntyre Co. of Nevada, Inc., 969 F. Supp. 609, 611 (D. Nev. 1997) ("[Three] communications fall within the one-year limitations period. Thus, the statute of limitations does not preclude this Court from asserting jurisdiction over the instant action."); Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360 (S.D.Fl. 2000) (citing Pittman and holding that "this court may assert jurisdiction over the plaintiff's claims in this case based on the non-time barred letters"). A recent case from the Eastern District of New York accords with this line of cases. In that case, several acts constituting alleged violations of the FDCPA occurred before the one-year limitations period, but during the one-year period the defendant had sent the plaintiff an allegedly misleading letter and may have improperly withdrew funds from plaintiff's account. The court held that the violations the plaintiff pointed to as within the one-year period could be considered "separate, discrete

violations," and accordingly, the statute of limitations had not run. Puglisi v. Debt Recovery Solutions, LLC, No. 08-CV-5024, 2010 WL 376628 at *3 (E.D.N.Y. January 26, 2010).

The undisputed facts of the instant case are more similar to this second line of cases. Here, the violations on which plaintiffs rely are GRC's statements in forms sent to them after July 9, 2008, describing a program that requires that nine "consecutive" payments be made before their loans can be rehabilitated. Each letter was a new, discrete misrepresentation of the federal loan rehabilitation program. Any one of these duplicate letters, if signed and returned by Ellis and Hamilton, would have memorialized an agreement based on allegedly false information about the terms of the loan program. By contrast, the cases on which GRC relies all involved court filings that merely repeat previous communications. The purpose of the FDCPA is to protect consumers from misleading information from collectors, not to protect courts from inaccurate filings. Misstatements repeated in court papers do not constitute new violations which restart the statute of limitations, but misstatements repeated in agreements mailed to consumers do.

Within one year of the filing of this case, GRC sent letters to the plaintiffs which communicated that in order to rehabilitate their loans, they needed to make nine consecutive payments. The fact that they first made similar statements before the one-year period does not bar the plaintiffs' claims. The Court holds, therefore, that plaintiffs' FDCPA claims fall within the statute of limitations.

**2. FDCPA violation**

GRC argues that it is also entitled to summary judgment because its characterization of the federal loan rehabilitation program—as requiring nine consecutive payments—was accurate,

and therefore it did not make "any false, deceptive, or misleading representation" in violation of the FDCPA. 15 U.S.C. § 1692e.

The federal loan rehabilitation program into which Ellis and Hamilton entered allows a borrower in default to make a certain number of payments, at which point the default status on the borrower's credit report will be removed, and the loan will be resold to a new lender. The federal statue which governs the program states, in part:

> Each guaranty agency shall enter into an agreement with the Secretary [of Education] which shall provide that upon securing 9 payments made within 20 days of the due date during 10 consecutive months of amounts owed on a loan . . . the guaranty agency (pursuant to an agreement with the Secretary) or the Secretary shall, if practicable, sell the loan to an eligible lender.

20 U.S.C. §1078-6(a)(1). In addition, the Department of Education's regulation promulgated under the statute, 34 C.F.R. §682.405(a), states:

> (2) A loan is considered to be rehabilitated only after—
> (i) The borrower has made and the guaranty agency has received nine of the ten payments required under the monthly repayment agreement.
> (A) Each of which payments is—
> (1) Made voluntarily;
> (2) In the full amount required; and
> (3) Received within 20 days of the due date for the payment, and
> (B) All nine payments are received within a 10-month period that begins with the month in which the first required due date falls and ends with the ninth consecutive calendar month following that month, and
> (ii) The Loan has been sold to an eligible lender.

GRC argues its interpretation that the nine payments must be consecutive accords with this language. Specifically, GRC points out that borrowers under the program have a 20-day grace period for each payment. GRC argues the purpose of the "tenth month" referred to in the statute and regulation is to allow borrowers to realize the benefit of that 20-day grace period for the ninth and final payment. For example, if a borrower's ninth payment was due on September

15th, because of the 20-day grace period the borrower would have until October 5th to make that last payment.

GRC's interpretation, however, is belied by both the plain language of the regulations, as well as guidance documents provided by the U.S. Department of Education.[2] The regulations clearly allow a borrower to miss one payment out of ten and still rehabilitate her loan. 34 C.F.R. § 682.405(2)(i) states a loan is rehabilitated only after "the borrower has made and the guaranty agency has received *nine of the ten* payments required under a monthly repayment agreement." (Emphasis added.) In addition, when these new rules were put into effect in 2006, the Department of Education posted a guidance document on a non-public website available to private collection agencies ("PCAs") collecting federal student loans. In a posting dated June 28, 2006 and titled "Payment Timing for Rehabs," the Department stated, "The 9 required payments do not need to be consecutive. A borrower may miss 1 out of 10 due dates as long as all other requirements are met." Regarding how the 20-day grace period for payments interacted with this

---

[2]Although the parties have not fully briefed the issue, GRC argues in a footnote to its reply brief that the Department's regulations are not entitled to deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984), nor are the Department's guidance documents entitled to similar deference under Auer v. Robbins, 519 U.S. 452, 461 (1997). The Court need not decide which level of deference applies, because the Court finds the statutory language is unambiguous. Nevertheless, even if the statute were silent as to this question, an agency interpretation is always entitled to "respect according to its persuasiveness," United States v. Mead Corp., 533 U.S. 218, 221 (2001). Whether or not a court should defer to an agency's interpretations under this less deferential standard depends "upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." Skidmore v. Swift & Co., 323 U.S.134, 140 (1944). The guidance documents, regulations, and statute are all consistent. They each require nine out of ten payment to qualify for loan rehabilitation, not nine consecutive payments. The Department's interpretation of the program is a valid reflection of the language of the statute. Therefore, the Department's interpretations of the loan rehabilitation program are entitled to Skidmore deference.

schedule, the Department stated, "we will grant an automatic exception for a borrower that makes 9 on-time payments and meets all other requirements, but due to the 20-day grace period, the first or last payment falls outside of the 10-month period." Cohen Dec. Ex A, ECF No. 55.

The plain language of the statute—that borrowers must make nine payments within ten consecutive months—makes clear that nine consecutive payments are not necessary to rehabilitate a loan under this program. If a borrower's payment was due on the 15th of every month, and she made payments in January, February, March, April, May, June, July, August, skipped a payment in September, and then made a final payment on October 15th, under the plain language of the statute she would be eligible for rehabilitation. Therefore, the undisputed evidence shows that GRC's letters did misrepresent the terms of the program. GRC is not entitled to summary judgment on that basis.

**B. Class Certification**

Plaintiffs now seek to certify two classes, defined as follows:

> **Class A:** Individuals in Connecticut who are similarly situated to the Plaintiffs in that, within one year of the commencement of the action, they have been subjected to collection attempts by the Defendant on account of a consumer obligation and to whom the Defendant sent a Terms Letter stating, "Nine (9) consecutive monthly payments . . . must be received timely," and, "According to federal law, a loan may be considered for rehabilitation only after you have made voluntary reasonable and affordable full payments for each of the 9 consecutive months. If a payment is received too late . . . this offer becomes null and void and the series of 9 payments must start over again.

> **Class B:** Individuals in Connecticut who are similarly situated to the Plaintiffs in that, within three years of the commencement of this action, they have been subjected to collection attempts by the Defendant on account of a consumer obligation and to whom the Defendant sent a similar Terms Letter as described in Class A.

Because of the FDCPA's one-year statute of limitations, the FDCPA claim is only brought on behalf of Class A. CUTPA has a three-year statute of limitations, and so the CUTPA

count is brought on behalf of Class B. Based on disclosures from GRC, there are 237 people in Class A, and 313 in Class B. All of the members of Class A are also members of Class B.

**1. Rule 23 Requirements**

The district court must determine through "rigorous analysis" that all Rule 23 requirements are met in order to certify the class. In re Initial Public Offering Secs., 471 F.3d 24, 40 (2d Cir. 2006). That a Rule 23 requirement overlaps with a merits issue does not prevent the court from making a determination as to whether the requirement has been met. See id. at 41. However, in assessing whether the requirements have been met, the court should not assess any aspects of the merits unrelated to a Rule 23 requirement. See id. (noting that the class certification proceeding should not turn "into a protracted mini-trial of substantial portions of the underlying litigation"). To be certified as a class, the class must satisfy the four threshold requirements of 23(a): the class must be so numerous that joinder of all members is impracticable ("numerosity"); there must be questions of law or fact common to the class ("commonality"); the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and the representative parties will fairly and adequately protect the interests of the class ("adequacy of the representation"). Fed. R. Civ. P. 23(a). Additionally, the class must satisfy one of the requirements of 23(b). Here, the plaintiffs seek certification under 23(b)(3), which provides that a class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*Numerosity*

Federal courts in the Second Circuit generally find a class sufficiently numerous when it comprises forty or more members. See, e.g., Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). Here, the classes are larger than 40, and joinder would be impracticable. Based on discovery from GRC's records, plaintiffs estimate Class A consists of 237 members, and Class B consists of 313 letters. GRC does not dispute that plaintiffs meet the numerosity requirement, and the Court finds the requirement satisfied.

*Commonality*

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). In class actions brought under the FDCPA, courts have found common questions when plaintiffs have received similar letters from the defendant as the basis of the lawsuit." Harrison v. Great Springwaters of America, Inc., No. 96-CV-5110, 1997 WL 469996 at *3 (E.D.N.Y. 1997) (internal citations and quotations omitted). In this case, the important common factual issue is the content of the letters GRC sent, and the central common legal issue is whether that language is actionable under FDCPA and CUTPA. These factual questions can be answered by reviewing GRC's files and databases. GRC does not dispute that these issues are common to members of the putative class. The commonality requirement is satisfied.

*Typicality and Adequacy*

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Robinson

v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001) (internal quotations omitted). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A., 126 F.3d at 376. As for adequacy, to determine whether the representation is adequate, the court typically inquires whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007). This inquiry serves to identify any conflicts of interests between the named plaintiffs and the remainder of the potential class. Collins v. Olin Corp., 248 F.R.D. 95, 102 (D. Conn. 2008) (Droney, J.).

GRC argues that plaintiffs are neither typical or adequate because their FDCPA claims are time-barred. Because the Court finds that the FDCPA claims are not time-barred (see discussion above), the Court also finds the plaintiffs' claims are typical, and the plaintiffs will adequately represent the class. Plaintiffs' counsel have substantial experience litigating FDCPA claims, in class actions and on behalf of individuals. Therefore, the typicality and adequacy prongs are met.

*Predominance*

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002). There are numerous cases from this district certifying FDCPA class actions involving collection letters under Rule 23(b)(3). See e.g., Lemire v. Wolpoff & Abramson, LLP, 256 F.R.D. 321 (D. Conn.

2009) (Haight, J.) (holding that although each member of the putative class did not receive an identical letter from the debt collector, the liability issue is common to the class and the predominance factor is satisfied); Macarz v. Transworld Systems, Inc., 193 F.R.D. 46, 54 (D. Conn, 2000) (Arterton, J.) (holding that "the predominance requirement is easily met" in a case involving similar debt collection letters from defendant).[3] GRC does not seriously dispute the predominance requirement of Rule 23(b)(3), and the Court finds it has been met.

*Superior Method?*

Rule 23(b)(3) lists factors "pertinent" to a finding that a class is superior to other available methods for adjudicating a controversy:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Here, it is unlikely that individual class members will have much interest in controlling the prosecution of the case. Because all class members are Connecticut residents, it is desirable to concentrate the litigation in this forum, and there do not appear to be substantial difficulties in managing the class action. Indeed, "[s]uits brought under the FDCPA such as this case regularly satisfy the superiority requirement of Rule 23 . . . [T]he prospect of relatively small recovery on individual adjudications of identical issues with differing results makes class form superior to individual litigation by class members." Petrolito v. Arrow Financial Servs., LLC, 221 F.R.D. 303, 314 (D. Conn. 2004).

---

[3] Although the letters in this case were letters outlining the terms of the loan rehabilitation program rather than debt collection letters, because the letters were identical or nearly identical, the legal and factual issues in this case are similarly resolvable through generalized proof.

**2. Supplemental Jurisdiction Over CUTPA Claims**

Finally, GRC argues that even if Class A is certified, the Court should not exercise supplemental jurisdiction over the state law CUTPA claim (brought on behalf of Class B), because this case is premised on federal question jurisdiction. The members of Class B who are not also members of Class A have only a CUTPA claim against GRC. (These are Connecticut residents who received an allegedly misleading letter from GRC between July 2006 and July 2008, and are therefore within the three-year limitations period for CUTPA, but not within the one-year window necessary for a FDCPA claim.) GRC argues that since subject matter jurisdiction in this case is based on a federal question, the Court should decline to exercise supplemental jurisdiction over those members of Class B who have no federal claim.

In support of this argument GRC relies on two cases. The first is a United States Court of Appeals for the Eighth Circuit case, Fielder v. Credit Acceptance Corporation, 188 F.3d 1031 (8th Cir. 1999), which held that "the claims of the individual members of a permissive class are distinct cases and controversies; each must separately support federal jurisdiction." Id. at 1036–37. Second, GRC also cites a case from this district, Petrolito. In that case, with facts very similar to the instant action, plaintiffs sought to certify a one-year FDCPA class and a three-year CUTPA class. The court certified the FDCPA class, but then certified only a one-year CUTPA class, declining to exercise jurisdiction over those class members in the first two years of the CUTPA class without a FDCPA claim.

In response, plaintiffs argue that the United States Supreme Court implicitly overruled Fielder when it held that in a class action premised on diversity jurisdiction, a court may exercise supplemental jurisdiction over those class members who do not satisfy the amount-in-

controversy requirement, as long as the other diversity requirements are met. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005). See also, Nerland v. Caribou Coffee, 564 F. Supp. 2d 1010, 1027–28 (D. Minn. 2007) (declining to follow Fielder in the wake of Exxon, and holding that in a case premised on federal question jurisdiction, the court had supplemental jurisdiction over class members' state law claims because the federal and state claims both arose from a common nucleus of operative fact). More importantly, the Second Circuit has failed to follow Fielder, and has affirmed a district court's exercise of supplemental jurisdiction over the state law claims of class members who cannot assert a related federal claim in a case based on federal question jurisdiction. See Denney v. Deutsche Bank AG, 443 F.3d 253, 266-269 (2d Cir. 2006).

This Court will exercise its discretion to join the CUTPA claim. In the wake of Exxon, the Court finds it has supplemental jurisdiction over the claims Class B. Therefore, for the reasons stated above, Classes A and B are certified.

**IV. Conclusion**

The defendant's motion for summary judgment [Dkt. # 49] is DENIED, for the reasons discussed herein. The plaintiffs' motion for class certification [Dkt. # 39] is GRANTED.

SO ORDERED this 23rd day of March 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**